This Decision is a
Precedent of the TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**

Mailed:  February 19, 2008

Cancellation No. 92045959

M.C.I. Foods, Inc.

v.

Brady Bunte

_____

Cancellation No. 92046056

Brady Bunte

v.

M.C.I. Foods, Inc.

**Before Walters, Rogers and Mermelstein, Administrative Trademark Judges**

**By the Board:**

These cases now come up for consideration of two virtually identical motions for sanctions, each filed October 19, 2007.  In each motion, Brady Bunte -- respondent in Cancellation No. 92045959 and petitioner in Cancellation No. 92046056 -- seeks judgment in his favor as a sanction for M.C.I. Foods, Inc.'s ("M.C.I.") failure to produce documents as required by previous orders of the Board, issued separately in each case.  The motions are fully briefed and ready for decision.

Cancellation Nos. 92045959 and 92046056

Background

Mr. Bunte owns a registration of the mark CABO CHIPS for "processed snack foods formed from corn, namely, chips."[1]  In Cancellation No. 92045959, M.C.I. seeks to cancel Bunte's registration based on an alleged likelihood of confusion with M.C.I.'s registered marks CABO PRIMO[2], LOS CABOS[3] and CABO CLASSICS[4], all of which are used for Mexican food products.  In his answer to M.C.I.'s petition for cancellation, filed July 28, 2006, Bunte denies the salient allegations in the petition for cancellation.

On July 19, 2006, prior to filing his answer in Cancellation No. 92045959, Bunte initiated Cancellation No. 92046056.  In it, Bunte seeks to cancel M.C.I.'s

---

[1]    Registration No. 3086128, issued April 25, 2006, with a claimed date of first use in commerce of December 2, 2003.

[2]    Registration No. 2674112, issued January 14, 2003, based on a claimed date of first use in commerce of April 19, 2001, for: "Mexican Style Food Products, namely, chimichangas, tacos, breakfast tacos, burritos, breakfast burritos, enchiladas, tostados, tortillas, corn tortillas, flour tortillas, tamales, taquitos, chalupas, taco boats, and flautas; Gorditas, namely thick Mexican bread containing cooked meats and/or poultry, vegetables, and seasoning; Appetizers, namely miniature hand held burritos, tacos, taquitos, quesadillas, tamales, and flautas; rice, cookies, pastries, coffees, candy, Snacks, namely salsa, tortilla chips, Mexican cookies, and Mexican candies; Bunuelos, namely thin tortilla pieces, deep fried with cinnamon and sugar; seasonings, cactus-flavored seasoning, spices, salsas, sauces, and mole sauce."

[3]    Registration No. 2988402, issued August 30, 2005, based on a claimed date of first use in commerce of April 6, 1992, for: "burritos, enchiladas, tacos, taquitos, soft tacos, sold in bulk to food distributors who resell to convenience stores, schools, fast food restaurants and the food service industry."

[4]    Registration No. 3088995, issued May 9, 2006, based on a claimed date of first use in commerce of September 1997 for: "burritos, enchiladas, tacos, and taquitos."

2

Registration No. 2674112 for CABO PRIMO, alleging that it was procured by fraud.  M.C.I. denies the salient allegations in this petition for cancellation.

Consolidation

These proceedings involve identical parties, an identical registration and related issues.  When cases involving common questions of law or fact are pending before the Board, the Board may order consolidation of the cases. *See* Fed. R. Civ. P. 42(a); see also, Regatta Sport Ltd. v. Telux-Pioneer Inc., 20 USPQ2d 1154 (TTAB 1991).  In view thereof, Cancellation Nos. 92045959 and 92046056 are hereby consolidated.

The consolidated cases may be tried and presented on the same record and briefs.  See Helene Curtis Indus. Inc. v. Suave Shoe Corp., 13 USPQ2d 1618 (TTAB 1989); Hilson Research Inc. v. Soc'y for Human Res. Mgmt., 27 USPQ2d 1423 (TTAB 1993).

The Board file will be maintained in Cancellation No. 92045959 as the "parent" case.  From this point on only a single copy of any paper or motion should be filed herein; but that copy should bear both proceeding numbers in its caption.  The consolidated cases shall be scheduled in the same manner as a single case with a counterclaim by Bunte.

Despite being consolidated, each proceeding retains its separate character.  The decision on the consolidated cases

shall take into account any differences in the issues raised by the respective pleadings; a copy of the decision shall be placed in each proceeding file.

Motions for Sanctions

In each of these now-consolidated proceedings, Bunte filed a motion to compel for M.C.I.'s failure to respond in any manner to Bunte's interrogatories and document requests. In each proceeding, Bunte's motion was granted as uncontested, and M.C.I. was "ordered to serve no later than **THIRTY DAYS** from the mailing date of this order its responses, without objection, to [Bunte's] first set of interrogatories and first request for production of documents."  The Board's order in Cancellation No. 92045959 issued on May 18, 2007, and the Board's order in Cancellation No. 92046056 issued on May 31, 2007.

In his motion for sanctions, Bunte indicates that on May 14, 2007, after the filing of Bunte's motion to compel but before issuance of the Board's first order granting Bunte's motion to compel, M.C.I. served untimely responses and objections to Bunte's discovery requests served in Cancellation No. 92045959.  In its response to certain document requests, M.C.I. indicated that "[r]esponsive documents will be made available to [Bunte] upon entry of a suitable protective order," and in response to others, M.C.I. indicated that "[r]esponsive documents will be made

available" to Bunte.  However, documents were not made available to Bunte, even after issuance of the Board's orders granting Bunte's motions to compel, nor did M.C.I. provide responses to Bunte's interrogatories or document requests without objection, even after issuance of the Board's orders.

We note at this point: (1) that a mere promise to produce unspecified documents at some unspecified later time is an insufficient response to a Board order compelling production; and (2) by rule, on August 31, 2007, the Board's standard protective order automatically went into effect, and it now governs this proceeding.  See, Trademark Rule 2.116(g); "Miscellaneous Changes to Trademark Trial and Appeal Board Rules," 72 Fed. Reg. 42,242 (Aug. 1, 2007).[5] As to the former point, Federal Rule 34(b) and the comments thereto clearly contemplate various ways in which a requesting party can seek production.  Thus, a responding party can arrange for production, and the parties can resolve disputes about production prior to the filing of a motion to compel.  However, after the motion to compel has been granted, production must be made in the manner requested by the inquiring party, unless otherwise directed

---

[5]    Further information on the Federal Register notice and the Board's standard protective order made applicable to all Board proceedings by that notice of rulemaking is available on the Board's webpage: http://www.uspto.gov/web/offices/dcom/ttab/index.html.

by the Board in the order granting the motion to compel. In the case at hand, Bunte had requested that production be made at his counsel's offices. Thus, that is the place where M.C.I. was obligated to produce the documents when the motions to compel were granted.

On August 1, and September 11, 2007, Bunte contacted M.C.I. to ask when M.C.I. would provide responses without objection. On September 27, 2007, M.C.I. responded by e-mail as follows:

> My client is completing the assembly of documents in response to your discovery requests. Also, my client is executing the protective order that will govern some of the documents produced in response to your discovery requests. We hope to have the documents available in the coming days.

M.C.I. has still not produced documents or served responses without objection, however, and Bunte contends that therefore "sanctions in the form of a default judgment should be entered against M.C.I."[6]

In opposing Bunte's motion, M.C.I. indicates that it "has provided full and complete responses to Bunte's Requests for Admissions and Interrogatories. These responses were provided *prior* to the Board's order granting Bunte's Motion to Compel." M.C.I. also claims that "some of

---

[6]     Because M.C.I. did not timely serve its discovery responses, its objections on the merits have been waived. Fed. R. Civ. P. 33(b)(4); Envirotech Corp. v. Compagnie Des Lampes, 219 USPQ 448, 449 (TTAB 1979).

the document requests required an exhausting (sic) and voluminous review of materials in M.C.I.'s possession, including materials that date back 50 years." Furthermore, "M.C.I. advised Bunte that all of the document responses were available to be produced upon Bunte's signing of a protective order (which protective order was drafted by Bunte's counsel)."

M.C.I. argues that sanctions are not "needed at all," because M.C.I. notified Bunte on October 19, 2007, the day Bunte filed its motion, that documents were available. M.C.I. also claims that it has not engaged in "willful evasion" of the Board's orders.

In his reply brief, Bunte argues that M.C.I. has yet to produce documents, and that "[p]etitioner's response to interrogatories included numerous untimely objections." According to Bunte, because the discovery period is now closed, this places him at an unfair disadvantage. Furthermore, "there is no declaration or other basis in the record submitted by M.C.I. to demonstrate that M.C.I. has diligently been attempting to collect responsive discovery materials …."

Decision

"If a party fails to comply with an order of the [Board] relating to discovery … the Board may make any appropriate order, including any of the orders provided in

7

Rule 37(b)(2) of the Federal Rules of Civil Procedure, except that the Board will not hold any person in contempt or award expenses to any party." Trademark Rule 2.120(g)(1). In this case, it is clear that M.C.I. failed to comply with the Board's orders granting Bunte's motions to compel.

Indeed, even after it was ordered to respond to Bunte's discovery requests without objection on the merits, M.C.I. did not do so. In fact, M.C.I. violated the Board's orders by effectively maintaining (i.e. not withdrawing) its objections on the merits to Interrogatory No. 17 and Document Request Nos. 4, 7, 11-13, 17-22 and 24 in Cancellation No. 92045959, and Document Request Nos. 1, 7, 11-13, 17-22 and 24 in Cancellation No. 92046056.[7]

M.C.I.'s other objections (those not based on the merits) are also inappropriate. Specifically, M.C.I.

---

[7] The Board has previously distinguished objections on the merits of a discovery request from other types of objections:

> Objections going to the merits of a discovery request include those which challenge the request as overly broad, unduly vague and ambiguous, burdensome and oppressive, as seeking non-discoverable information on expert witnesses, or as not calculated to lead to the discovery of admissible evidence. In contrast, claims that information sought by a discovery request is trade secret, business-sensitive or otherwise confidential, is subject to attorney-client or a like privilege, or comprises attorney work product, goes not to the merits of the request but to a characteristic or attribute of the responsive information.

No Fear v. Rule, 54 USPQ2d 1551, 1554 (TTAB 2000).

objected to a large number of Bunte's discovery requests asserting that the information requested is protected by the attorney-client privilege or attorney work product doctrine. However, M.C.I. failed to produce the required privilege log.  Fed. R. Civ. P. 26(b)(5)(A)(ii); No Fear, 54 USPQ2d at 1556 (such objections require "a particularized explanation of the privilege relied on, and a description of the documents which, without revealing the privileged information, is sufficient to allow the inquiring party to assess the applicability of the privilege").

Furthermore, and in violation of the Board's orders, M.C.I. did not make responsive documents available to Bunte until over three months after the Board issued its orders. The Board required M.C.I. to do so within 30 days.  While it may have been acceptable to merely make identified documents available to Bunte when M.C.I. originally responded to Bunte's document requests, it was not acceptable for M.C.I. to offer production in this manner once the Board ordered M.C.I. to respond without objection.  Indeed, Bunte requested that documents be produced in the office of his counsel, and M.C.I.'s offer to merely make the requested documents available at an unspecified time and place effectively constituted an objection on the merits, which was prohibited by the Board's orders.  No Fear, 54 USPQ2d at

1554 (TTAB 2000) ("it was improper for applicant, after being ordered to provide discovery responses without objection, to have raised an objection regarding place of production.").

Because M.C.I. failed to comply with the Board's orders, sanctions are appropriate. Bunte requests the sanction of judgment, but under the circumstances presented here we believe that at this point this ultimate sanction would go too far. See, Elec. Indus. Ass'n v. Potega, 50 USPQ2d 1775, 1777 (TTAB 1999).

Lesser sanctions are appropriate, however, and accordingly, Bunte's motions for sanctions are hereby **GRANTED**, as follows:

> (1) Within **TWENTY DAYS** of the mailing date of this order, M.C.I. shall: (a) prepare and serve written responses to Bunte's discovery requests, without objection on the merits; (b) copy all responsive documents at its own expense and deliver them to Bunte; and (c) serve a privilege log.
>
> (2) The Board will accept any documents produced by M.C.I., if filed during trial by Bunte, as authentic and admissible.
>
> (3) M.C.I. is prohibited from relying at trial on any documents requested by Bunte during discovery but not produced by M.C.I. within the time set for complying with the Board orders granting Bunte's motions to compel.

As a result of this prohibition, M.C.I. may not introduce documents requested by Bunte during discovery as an exhibit to a testimonial deposition or by notice of reliance. By contrast, Bunte may rely on any and all

documents produced by M.C.I. M.C.I. is not, however, precluded from relying on documents which were reasonably not part of a document production request by Bunte during discovery.[8]

Proceedings are resumed, and the discovery and trial dates are reset as follows:

| | |
|---|---|
| THE PERIOD FOR DISCOVERY TO CLOSE: | CLOSED |
| 30-day testimony period for plaintiff in Cancellation No. 92045959 (M.C.I.) to close: | May 14, 2008 |
| 30-day testimony period for defendant in Cancellation No. 92045959 (Bunte) and plaintiff in the counterclaim to close: | July 13, 2008 |
| 30-day testimony period for defendant in the counterclaim and rebuttal testimony for plaintiff in the cancellation to close: | September 11, 2008 |
| 15-day rebuttal testimony period for plaintiff in the counterclaim to close: | October 26, 2008 |

Briefs shall be due as follows:

| | |
|---|---|
| Brief for plaintiff in the cancellation shall be due: | December 25, 2008 |
| Brief for defendant in the cancellation and plaintiff in the counterclaim shall be due: | January 24, 2009 |
| Brief for defendant in the counterclaim and reply brief, if any, for plaintiff in the cancellation shall be due: | February 23, 2009 |

---

[8] Of course, both parties' registrations are of record and the parties may rely on them at trial. Trademark Rule 2.122(b)(1).

Cancellation Nos. 92045959 and 92046056

Reply brief, if any, for
plaintiff in the counterclaim
shall be due:                                    March 10, 2009

***

12